IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH SEALS,            )  | |
|    Plaintiff,           ) | |
| ) | |
| v.                                 ) | |
| ) | CIVIL ACTION NO. 11-00001-KD-N |
| RETIREMENT PLAN OF INTERNATIONAL ) | |
| PAPER, *et al.*,                   ) | |
|    Defendants.          ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docs. 16-19), Plaintiff's opposition (Doc. 24, 28) and Defendants' reply (Docs. 26, 32); and Plaintiff's Motion for Summary Judgment (Doc. 20) Defendants' opposition (Doc. 23) and Plaintiff's reply (Doc. 25).

**I.      Background**

At issue in this case is whether the Plaintiff Joseph Seals ("Plaintiff") is entitled to long-term disability retirement benefits under the International Paper Company's Retirement Plan (the "Plan")[1] (an employee pension benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.*).

From June 16, 1983 through May 15, 2008, Plaintiff worked for International Paper in various positions. (Doc. 17 at 2). While employed, Plaintiff was a participant in the company's retirement plan within the meaning of 29 U.S.C. § 1002(7). (Id.) On May 14, 2008, while working as a process tester at the Riverdale, Alabama mill, Plaintiff allegedly became disabled -- due to physical and mental disorders -- and thus unable to perform his regular occupation. (Doc. 1). Specifically, Plaintiff contends that he is disabled due to fluctuating hypertension,

---
1 (Doc. 20-1 at 2-3).

hypercholesterolemia, diabetes mellitus, bilateral carpal tunnel syndrome, osteoarthritis of the knees with severe bilateral knee inflammation, panic disorder with agoraphobia and depression. (Id. at 2 at ¶8). Plaintiff offers, in support of his claim, medical records from his treating physicians Dr. Raingarao V. Gummadapu (also called Dr. G.V. Rao (internist/cardiologist)), Dr. H. John Park (orthopedist), and Licensed Clinical Social Worker Gordon Forward.

From a review of the record, a timeline of the relevant events surrounding Plaintiff's long-term disability benefits claim includes the following:

- **March 5, 2008:** Plaintiff was seen by Dr. Rao who noted his was still under doctor's care until complications improve and he was still having carpal tunnel syndrome. Diabetes mellitus and hypertension were also noted. (Doc. 20-1 at 16).

- **May 14, 2008:** Plaintiff allegedly became disabled.

- **May 14, 2008:** Plaintiff was seen by Dr. Rao for bilateral knee arthritis and fluctuating blood pressure with complaints about joint space; joint narrowing was noted. Diabetes mellitus and hypertension were noted. (Doc. 20-1 at 17).

- **May 15, 2008:** Plaintiff's last day of employment.

- **June 17, 2008:** Plaintiff was seen by Dr. Rao "condition still remains the same will remain under Dr. care until further notify." Diabetes mellitus and hypertension were noted. (Doc. 20-1 at 21).

- **July 23, 2008:** Dr. Park treated Plaintiff for left knee pain and diagnosed him with chronic, symptomatic left knee osteoarthritis. (Doc. 18-3 at 146).

- **September 9, 2008:** Dr. Rao saw Plaintiff for "same problems" with complications-diabetes mellitus and hypertension. (Doc. 18-3 at 84).

- **September 25, 2008:** Dr. Rao completed an Attending Physician's Statement of Disability Functional Assessment Form diagnosing Plaintiff with hypertension, diabetes mellitus with fluctuating blood sugar still not controlled, carpal [tunnel] syndrome, anxiety and complications, and blood pressure "still having some complications." (Doc. 20-1 at 5). Dr. Rao noted that Plaintiff "remain under my care until we get his tx. under control." (Id.)

- **September 26, 2008:** Plaintiff received notice from the Plan that he might be eligible for disability retirement benefits and was provided with materials to apply for same. (Doc. 18-3 at 11, 62-78).

2

- **September 30, 2008**: Dr. Rao completed an Attending Physician's Functional Assessment Form for Limitations, finding that Plaintiff can stand/walk 1-3 hours/day, sit 3-5 hours/day, lift 10-20 pounds max., lift 10 pounds occasionally, use his hands for repetitive simple grasping but not repetitive pushing/pulling, fluctuating blood pressure might be a problem for reaching above shoulder level … can use his feet for repetitive reining and pushing, is able to occasionally bend and stoop but not climb, and is environmentally restricted from heights and excess dust/fumes. (Doc. 20-1 at 8). Dr. Rao noted that Plaintiff suffers from fluctuating blood sugar, blood pressure, carpal syndrome – "may cause him to "blink" out at times and which cannot be determined when or where" as well as anxiety. (Id.) For the Impairment Classification Physical Impairment portion of the form, Dr. Rao found that Plaintiff is Class III – "slight limitation of functional capacity, capable of light work (35-55%). (Id. at 9). Dr. Rao added that Plaintiff has the qualifications (by reason of education, training or experience) to perform the limited duties for which he is physically capable, the condition is likely permanent, and he became disabled on 5/14/08. (Id.) Dr. Rao also completed a Neuropsychiatric Disease Functional Assessment Form opining that Plaintiff had "moderate" impairment in all 16 areas designated. (Doc. 18-3 at 99).

- **October 2, 2008:** Dr. Rao saw Plaintiff who "still remains under Dr. care" with same condition as stated in prior report. (Doc. 18-3 at 85).

- **October 5, 2008**: Plaintiff applied for disability retirement benefits based on diabetes mellitus, blood pressure continually raised, carpal tunnel syndrome and anxiety. (Doc. 18-3 at 86). In support of his claim, Plaintiff attached the Functional Assessment Form by Dr. Rao and an Attending Physicians Statement of Disability.

- **October 10, 2008:** Plan correspondence to Plaintiff states the Plan unable to reach him. (Doc. 18-3 at 56, 81).

- **November 5, 2008:** Plaintiff was seen by Dr. Rao and surgery was advised. Hypertension, anxiety and diabetes mellitus were noted. (Doc. 20-1 at 18).

- **November 13, 2008:** Plaintiff applied for, and received, sickness and accident benefits ("S&A" benefits) through this date.

- **November 20, 2008:** The Plan Administrator requested additional medical records from Drs. Rao and Park, whom Plaintiff had identified as his orthopedic and treating physicians. (Doc. 18-3 at 125-126).

- **November 26, 2008**: Plaintiff was seen by Dr. Rao. It was noted that Plaintiff complains of chronic knee pain (osteoarthritis) and fluctuating blood pressure along with diabetes mellitus. (Doc. 20-1 at 14).

- **December 3, 2008:** The Plan Administrator sent a second request for additional medical records to Drs. Rao and Park. (Doc. 18-3 at 127-128).

- **December 5, 2008:** The Plan Administrator notified Plaintiff that Dr. Rao had not responded to its requests for additional medical records. (Doc. 18-3 at 50).

- **December 8, 2008:** Plaintiff was seen by Dr. Rao and diabetes, hypertension and anxiety were noted. (Doc. 20-1 at 19).

- **December 15, 2008:** The Plan's record notes that it had sent two (2) requests to Dr. Rao with no response. At his point only the Plan only had received records from Dr. Parks. (Doc. 18-3 at 51). Dr. Park's records indicated that Plaintiff was having "much less pain" with his knee in November 2008. (Id.) The Plan corresponded with Plaintiff noting it was still waiting on Dr. Rao's records. (Doc. 18-3 at 129).

- **January 6, 2009:** The Plan Administrator attempted to contact Plaintiff via telephone to seek his assistance in obtaining Dr. Rao's records.

- **January 13, 2009:** The Plan Administrator again notified Plaintiff via letter that Dr. Rao had not responded to its requests for additional medical records, which was delaying a decision on his claim for benefits. (Doc. 18-3 at 49, 130).

- **Between February 9, 2009 and February 12, 2009:** The Plan decided to deny Plaintiff's claim as the medical information received "to date" did not establish that he was disabled from any occupation. (Doc. 18-3 at 45). After the initial denial letter was prepared, however, Dr. Rao's office responded to the Plan's requests for medical records, supplying February 9, 2009 records and a February 11, 2009 letter. (Id.)

- **February 11, 2009**: Dr. Rao drafted a letter that stated that Plaintiff was under his medical supervision for "multiple complaints" and that in his opinion, Plaintiff is "unable to perform work related activities" for his job position. Dr Rao further stated that plaintiff had hypertension, diabetes mellitus, hyper-cholesterol and anxiety. (Doc. 20-1 at 12). Dr. Rao included records from 2/11/09, 2/1/09, 1/9/09, 11/26/08, 5/14/08, 3/5/08, 12/8/08, 11/5/08, 9/8/08, 10/2/08 and 8/22/08, repeating these diagnoses. (Doc. 18-3 at 134-145).

- **February 12, 2009**: Plan Administrator Sedgwick CMS notified Plaintiff that they had completed their review of his claim and determined that he did not qualify for disability retirement benefits under the Plan and denied his claim. (Doc. 1-1; Doc. 18-3 at 45-46, 154-157). The Plan noted that on Plaintiff's functional assessment form, "the physician…noted you could do light work….[and] we were unable to assess any medical [information] from…Dr. [Rao]…despite the medical information received from [him], we were unable to obtain a complete understanding of your medical conditions and how you are prevented from performing any occupation for the rest of your life as required by the plan." (Doc. 1-1 at 3). The Plan concluded that nothing in Dr. Rao's records "conclusively proves" that Plaintiff has a "total and permanent disability from any occupation." (Doc. 18-3 at 45).

- **March 12, 2009:** Dr. Rao drafted a letter stating that Plaintiff is "unable to perform work activities" due to fluctuating hypertension, bilateral knee inflammation, hypercholesterol, diabetes mellitus, anxiety and carpal tunnel syndrome. (Doc. 18-3 at 167).

- **April 24, 2009:** Dr. Rao completed a certificate of fitness for duty and work restrictions concluding that Plaintiff "is not able to perform the job duties of his[] position[]" and needs permanent work restrictions to allow Plaintiff to return to work including: "I recommend Mr. Seal have surgery as he [is] able to attend the procedure due to his condition. I tell he may benefit from this procedure. That [is] why I excuse his work as permanent until he think[s] about the procedure." (Doc. 18-3 at 169). Dr. Rao opined Plaintiff "is NOT able to perform ANY job duties at this time." (Id. at 170).

- **April 30, 2009:** Plaintiff was treated by Psychotherapist Gordon Forward for anxiety and panic disorder with agoraphobia and depression. (Doc. 18-3 at 168).

- **May 22, 2009:** The Plan received Plaintiff's appeal of the denial of his claim (via a letter dated March 23, 2009 (Doc. 18-3 at 166)) for disability benefits as well as his records submission (a 3/12/09 letter from Dr. Rao noting his **i**nability to perform work related activities and a 4/30/09 letter from Licensed Clinical Social Worker Gordon Forward discussing Plaintiff's mental health treatment for panic disorder with agoraphobia and depression but providing no opinion on disability). (Doc. 18-3 at 39, 41).

- **June 2, 2009:** The Plan acknowledged receipt of Plaintiff's appeal by letter and claim reopened for appeal. (Doc. 18-3 at 173).

- **June 4, 2009:** The Plan record notes a 4/24/09 Fitness for Duty Certificate "unable to work" and 4/30/09 note from Gordon Forward that Plaintiff was being treated for panic disorder with agoraphobia and depression. (Doc. 18-3 at 40).

- **June 8, 2009:** The Plan sent Plaintiff a letter about its efforts to reach him via telephone to discuss his appeal and asked Plaintiff to contact the appeal specialist to discuss his claim. (Doc. 18-3 at 40, 175).

- **June 12, 2009:** The Plan appeal specialist spoke with Plaintiff; Plaintiff notified the Plan that he did not intend to submit any additional information/records and that the Plan could continue with the appeal process. (Doc. 18-3 at 39).

- **June 17, 2009:** The Plan requested occupational medicine and psychiatric reviews of Plaintiff's claim and claim file. Dr. Robert N. Polsky (psychiatrist) and Dr. Robert D. Petrie (occupational and environmental medicine) were selected to conduct an independent medical review of Plaintiff's disability benefits claim.

- **June 25, 2009:** Dr. Polsky provided the Plan with the results of his independent medical review, opining that Plaintiff is not disabled. (Doc. 18-3 at 181-183). Dr. Petrie provided the Plan with the results of his independent medical review, opining that Plaintiff is not disabled and could perform light to medium job activities.. (Id. at 184-186).

- **July 8, 2009:** The Plan disability review committee met to discuss Plaintiff's claim and decided that a Transferable Skills Analysis report was needed and requested that Dr. Petrie to clarify his report as well as that an internal medicine specialist perform a "whole man" review of Plaintiff's claim. (Doc. 18-2 at 34-35).

- **July 14, 2009:** Dr. Jordan (internal medicine) conducted a review of Plaintiff's claim and Dr. Petrie supplemented his review. (Doc. 18-3 at 33, 200-203). Dr. Jordan concluded that Plaintiff was not disabled from performing any occupation and is capable of sedentary to light work. (Id.) Also, Dr. Petrie opined that Plaintiff's anxiety diagnosis does not result in disability or indicate an inability to perform unrestricted job duties. (Doc. 18-3 at 32-33, 204-205).

- **July 16, 2009:** Job Accommodations Specialist Zenia Andrews, M.S., C.R.C., performed a Transferable Skills Analysis identifying six (6) light duty positions that met Plaintiff's education, work history and work restrictions. (Doc. 18-3 at 206-207).

- **August 11, 2009:** Two (2) additional Transferable Skills Analyses were performed by Karen Taussig, M.S., C.R.C., identifying five (5) sedentary-light and six (6) sedentary duty occupations that met Plaintiffs education, work history and work restrictions. (Doc. 18-3 at 227-232).

- **August 20, 2009**: The Disability Review Committee reconvened and completed the review of Plaintiff's appeal, including reviewing the reports of Drs. Petrie, Polsky and Jordan and the three (3) TSAs, upholding the denial of his disability retirement benefits claim. (Doc. 1-4). As the basis for denial, the Plan concluded that Plaintiff did not satisfy the disability definition as he was capable of performing several sedentary and light duty positions that met his education, training and experience. (Doc. 18-3 at 2-3, 28-29, 215-216).

- **October 21, 2009:** Plaintiff filed a second appeal of the Plan decision via his attorney. (Doc. 18-3 at 221-222).

- **October 27, 2009:** The Plan acknowledged receipt of his second appeal. (Doc. 18-3 at 26-27, 219-220).

- **November 4, 2009:** The Plan notified Plaintiff that he had completed all allowable appeals under the Plan. (Doc. 18-3 at 26-27, 225).

On January 3, 2011, Plaintiff filed a Complaint against the Plan and Plan Administrator to enforce his rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), claiming that the decision to deny him benefits constitutes an abuse of discretion as unreasonable and not based on substantial evidence. (Doc. 1). Plaintiff also alleges a second count for equitable relief or estoppel. (Id.)

## II.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying

7

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter…the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

### III. Discussion

#### A. Plaintiff's ERISA Claim: Count One

ERISA provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries; thus, the Supreme Court established guidance for same in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989) and Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). More recently, the Eleventh Circuit has reiterated a multi-step framework to guide lower courts when reviewing a plan administrator's benefits decision. This framework consists of the following "six-step expanded Firestone" test:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is " *de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blakenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011) (citing Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195 (11th Cir. 2010) and Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by* Doyle v. Liberty Life Assurance Co. of Boston, 542 F.3d 1352 (11th Cir. 2008)). "All steps of the analysis are 'potentially at issue' where a plan vests discretion to the plan administrator to make benefits determinations. *See id.* at 1356 n 7. Conversely, then, where a plan does not confer discretion, the court simply applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See* 489 U.S. at 115 ('[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.')." McCay v. Drummond Co, Inc., 2011 WL 5438950, *14 (N.D. Ala. 2011).

Defendant contends that the arbitrary and capricious standard applies. (Doc. 17 at 15). Plaintiff contends that he prevails under any standard but that "the one most likely to apply" is the heightened standard due to an "inherent conflict of interest" due to the "self insured nature of

the plan and the safe reliance on opinion of 'in house' non-examining medical information." (Doc. 20 at 4-5). A review of the record reveals that the Plan grants to the Plan Administrator the discretionary power and discretionary authority to interpret the Plan and to determine the amounts of benefits which shall be payable to any person in accordance with the provisions of the Plan. (Doc. 18-2 at 102 at ¶12.01(b)(iii) (Plan 0102)). Moreover, Retirement Plan benefits, including disability retirement benefits, are funded by a separate trust to which International Paper does not have access for any purpose other than funding and administering claims for benefits under the Plan. (Doc. 18-2 at 97 at Article X Funding (Plan 0097)). Based on the foregoing, the Plan sufficiently confers discretion to the Plan Administration as to make Plaintiff's ERISA claim appropriately reviewed under the arbitrary and capricious standard. Thus, the Plan Administrator's decision will be affirmed if, upon *de novo* review, the Court agrees with the Administrator's decision; or the Court disagrees with the decision but the decision is reasonable considering any conflict of interest which may exist. Plaintiff bears the burden of showing the Administrator's decision was *de novo* wrong or unreasonable and thus, arbitrary and capricious. See, e.g., Doyle, 542 F.3d at 1360; Horton v. Reliance Std. Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 2001).

Plaintiff contends that summary judgment is due to be granted in his favor because: 1) medical records establish the existence of a severe medical condition which is chronic and uncontrolled; 2) Dr. Rao's February 11, 2009 and March 14, 2009 statements constitute a "total disability affidavit;" 3) the SSA determination was fully favorable and "was made available to the plan administrat[or] prior to the final decision;" and 4) the Plan relied on non-examining

physicians or "paid experts" rather than his treating and examining physicians. (Doc. 20 at 6).[2] Applying the foregoing standard of review, however, the Court has determined that the Plan Administrator's benefits-denial decision is not "wrong".

In order to qualify for disability retirement benefits under the Plan, Plaintiff must establish that he is totally incapable of performing any employment for which he is qualified by education, training or experience and that such condition is likely to be permanent for the rest of his life. The Plan defines disability as follows:

> If your become disabled while employed by the company, you may be entitled to a disability retirement benefit under the Plan provided you meet the Plan's definition of "totally and permanently disabled" as determined by your plan administrator. To be considered "totally and permanently disabled", your disability must be a medically determinable physical or mental condition or a diagnosed terminal illness that keeps you from performing any employment for which you are considered qualified by education, training, or experience and which is likely to be permanent for the rest of your life.

(Doc. 20-1 at 2-3). Based on the administrative record, Plaintiff has not satisfied the Plan's disability definition.

First, even Plaintiff's treating or examining physicians did not opine that he has a diagnosed terminal illness or a physical/mental medical condition that keeps him from performing any employment for which you are considered qualified by education, training, or experience and which is likely to be permanent for the rest of his life. In September 2009, Dr. Rao concluded that Plaintiff's physical impairment consists of "Class III: slight limitation of functional capacity-capable of light work (35-55%)[;]" and that his psychiatric impairment consists of "Class III-[p]atient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)." The Court notes that in February

---

2 Relying on <u>Whatley v. CNA</u>, 189 F.3d 1310 (11th Cir. 1999).

and March 2009, Dr. Rao revised his findings to subsequently conclude that Plaintiff was unable to perform the job duties of his position and needed permanent work restrictions (related to his knee, for which Dr. Rao thought surgery would be beneficial).  However, Dr. Rao explained in April 2009, that he only put "permanent" work restrictions on Plaintiff "until he [could] think about [having] the procedure[]" suggesting a non-permanent status of restrictions if/when Plaintiff had the surgery.  Additionally, the records suggest that Dr. Rao's findings and restrictions were focused on Plaintiff's current job position.

Second, in addition to reviewing the records from Plaintiff's treating or examining physicians, the Plan Administrator considered the findings of three (3) non-examining independent medical reviewers who assessed Plaintiff's disability benefits claim: Dr. Polsky, Dr. Petrie and Dr. Jordan.  Plaintiff contends that it was improper for the Plan Administrator to rely on the findings of non-examining physicians because "such reviews…[are] the very essence of arbitrariness and capriciousness[]" and that the Administrator "sought to gather support for its position by employing chosen medical specialists."  (Doc. 24 at 3).  Despite Plaintiff's characterization, the non-examining physicians each attested that their compensation was not dependent on the specific outcome of their reviews and that they did not have any relationship, including with the referring entity or befit plan, which creates a conflict of interest.  As for Plaintiff's suggestion that the Administrator hand-picked physicians who were not independent, he has presented no evidence of such, and the record indicates otherwise (*e.g*., the Plan Administrator repeatedly requested records from Plaintiff and his physicians, and conferred with Plaintiff's physicians when possible to discuss his impairments and limitations). Additionally, "[i]t is entirely appropriate for an administrator to rely on written reports of consultants who have done paper reviews of a claimant's medical records to rebut the opinion of the treating

12

physician asserting claimant is disabled." Hufford v. Harris Corp., 322 F.Supp.2d 1345, 1349 (M.D. Fla. 2004). See also Richards v. Hartford Life and Accident Ins. Co.., 356 F. Supp.2d 1278, 1286 (S.D. Fla. 2004). Moreover, the Eleventh Circuit has explained that it is not error for a plan administrator to "give different weight" to the opinions of independent reviewers. See, e.g., Helms v. General Dynamics Corp., 222 Fed. Appx. 821, 833 (11th Cir. 2007); Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1279-1280 (11th Cir. 2005).

Notably, with regard to the Sixth Circuit case upon which Plaintiff relies for this contention – Bennett v. Kemper Nat'l Services, Inc., 514 F.3d 547 (6th Cir. 2008) – the Eleventh Circuit cited Bennett for the opposite contention: "we find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination[,]" rejecting the lower court's conclusion that file reviews "counted as evidence that [the benefit decision maker] acted arbitrarily and capriciously." Blakenship, 644 F.3d at 1357 (citing Bennett, 514 F.3d at 554).

Further, Dr. Robert N. Polsky, a board-certified psychiatrist, reviewed Plaintiff's records and conferred with Mr. Forward (one of Plaintiff's treating physicians)[3] before concluding that Plaintiff is not disabled. Dr. Polsky opined that while his mental condition "would perhaps make work more difficult" he is not disabled as "there is insufficient clinical evidence that would substantiate a global impairment of functioning precluding him from performing job duties." (Doc. 18-3 at 36-37). Likewise, Dr. Petrie, a board-certified physician in occupational and environmental medicine, reviewed Plaintiff's records and concluded that he is not disabled but rather would be "expected to be able to function in a light-to-medium category of employment."

---

3  Dr. Polsky tried twice to reach Dr. Rao but his phone calls were not returned.

13

(Id. at 37-38). Dr. Petrie also tried to reach Dr. Rao but was informed that he was discontinuing his practice and was unavailable. (Id.) Dr. Petrie was, however, able to confer with Dr. Park. (Id.) Dr. Petrie also supplemented his initial medical review, noting Plaintiff's psychiatric assessment, and opined that the anxiety diagnosis "does not result in disability or indicate an inability to perform unrestricted job duties" either alone or when in combination with the other medical conditions. Similarly, Dr. Taiye A. Jordan, a board-certified physician in internal medicine, conducted a "whole man" review of Plaintiff's benefits claim. Before rendering his conclusions, Dr. Jordan reviewed Plaintiff's records and tried to reach Dr. Rao but was told he was out of the office on extended medical leave. Dr. Jordan opined that Plaintiff is not disabled from performing any occupation, from an internal medicine perspective, as he is capable of working in the sedentary to light job duty description.

Third, Plaintiff relies on the "fully favorable" June 30, 2009 SSA decision[4] to contend that the Plan Administrator's decision was arbitrary and capricious. (Doc. 20-1 at 23-24); (Doc. 1-2). There is no evidence to support that Plaintiff submitted the SSA decision to the Plan Administrator during the claim process, even though the Administrator requested documentation, spoke to Plaintiff regarding his appeal, and the SSA decision was issued before the appeal process had completed. As such, the SSA decision is simply not before the Court on summary

---

4 The Court simply notes, without considering, the SSA found Plaintiff disabled as of May 14, 2008 and listed his impairments fluctuating hypertension, diabetes mellitus, bilateral carpal tunnel syndrome, osteoarthritis of the knees with severe bilateral knee inflammation, panic disorder with agoraphobia and depression. (Doc. 1-2). The SSA decision concluded that Plaintiff retains the residual functional capacity to perform sedentary work within the parameters specified in the Healthcare Provider Certification Fitness for duty and Work Restrictions completed by Dr. Dr. Rao such that he "is unable to sustain work activity at any exceptional level on a regular and continuing basis." (Doc. 1-2 at 8-9). The SSA added that if Plaintiff had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed but "the additional limitations [by Dr. Rao] so narrow the range of work Claimant might otherwise perform that a finding of 'disabled' is appropriate[.]" (Id. at 10).

judgment. This is because it is improper for this Court to consider evidence not submitted to the administrator during the claims process; rather, the Court may only consider the administrative record (the facts known to the administrator at the time the decision was made). See, e.g., Blakenship, 664 F.3d at 1354; Lee v. Blue Cross/Blue Shield of Ala., Inc., 10 F.3d 1547, 1550 (11th Cir. 1994); Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989).

Fourth, Plaintiff contends that the Transferable Skills Analysis (TSAs) requested by the Plan Administrator were flawed as they "did not take into account" his disabling conditions based on the SSA decision. (Doc. 25 at 5-6). As noted *supra*, the Court cannot consider the SSA decision because it was never submitted to the Plan Administrator and is thus not part of the administrative record.

Nevertheless, the record indicates that on July 16, 2009, Job Accommodations Specialist Zenia Andrews, M.S., C.R.C., performed a TSA and concluded that there were six (6) light duty positions that met Plaintiff's education, work history and work restrictions. On August 11, 2009, Karen Taussig, M.S., C.R.C., performed two (2) additional TSAs in which she opined in the first TSA that there were five (5) sedentary-light duty occupations which met Plaintiff's education, work history and work restrictions, and in the second TSA found six (6) sedentary occupations that met Plaintiff's education, work history and work restrictions.

In sum, the Court agrees with the Plan Administrator's decision and affirms same. See, e.g., Williams, 373 F.3d at 1137-1138; Blakenship, 644 F.3d at 1355. Plaintiff has failed to satisfy his burden of showing that the decision was *de novo* wrong or unreasonable to thus be arbitrary and capricious. See, e.g., Doyle, 542 F.3d at 1360; Horton, 141 F.3d at 1040. The Plan fully considered the medical information submitted by Plaintiff and his physicians -- as well as

15

the opinions of three (3) non-examining physicians and three (3) TSAs performed by two (2) different Job Accommodations Specialists -- to conclude that he failed to make a sufficient showing of disability as defined under the Plan.  In any event, if certainly cannot be said that the Plan decision was arbitrary and capricious.  White v. Coca-Cola, Co., 542 F.3d 848, 856 (11th Cir. 2008) (providing that as long as a reasonable basis appears for the benefit decision "it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision[]").

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment as to Count One is **GRANTED** and Plaintiff's motion for summary judgment as to Count One is **DENIED.**

    **B.**    <u>**Equitable relief and/or estoppel: Count Two**</u>

Plaintiff asserts a second count for equitable relief and/or estoppel "to the extent that he is entitled to such under ERISA's catch-all provision." (Doc. 1 at ¶27).  As set forth in Waschak v. The Acuity Brands, Inc. Senior Management Benefit Plan, 384 Fed. Appx. 919, 923 (11th Cir. 2010):

> ….Equitable estoppel is appropriate where "(1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." Jones v. American Gen'l Life and Accident Ins. Co., 370 F.3d 1065, 1069 (11th Cir.2004) (citations omitted).

Plaintiff has neither alleged ambiguity in the Plan,[5] nor that the Plan Administrator made representations to him that constitute and informal interpretation of the ambiguity. Additionally, ERISA's "catch-all" provision -- Section 502(a)(3) of ERISA  (29 U.S.C. § 1132(a)(3)) -- does

---

5 At best, Plaintiff contends only that the requirement for permanent disability in the Plan is "overly broad" and imposes an "onerous burden for plaintiffs in not only proving their current status but what is likely to occur in the future." (Doc. 25 at 4-5).

not save Count Two because Plaintiff has an adequate remedy under 29 U.S.C.§ 1132(a)(1)(B) in Count One.  Indeed, when a plan participant seeks the benefits that he contends should have been distributed under an ERISA plan, the appropriate remedy is not a claim for "other appropriate equitable relief," but rather a claim under Section 1132(a)(1)(B).  See, e.g., Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1288 (11th Cir. 2003); Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084, 1088-1089 (11th Cir. 1999); Kennedy v. Metropolitan Life Ins. Co., 357 F. Supp. 2d 1346, 1348-1349 (M.D. Fla. 2005). Accordingly, it is **ORDERED** that Defendant's motion for summary judgment as to Count Two is **GRANTED** and Plaintiff's motion for summary judgment (to the extent it addresses Count Two) is **DENIED.**

### IV.     Conclusion

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (Doc. 16) is **GRANTED** such that Plaintiff's claims are **DISMISSED WITH PREJUDICE;** thus, Plaintiff's motion for summary judgment (Doc. 20) is **DENIED.**

**DONE** and **ORDERED** this the **23rd** day of **January 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**